**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHEWANDA WILLIAMS<br>3314 Corrigan Court<br>Houston, TX  77014, | )<br>)<br>)<br>) |
| BRYAN D. HUNTER<br>2039 River Road<br>Dover-Foxcroft, ME 04426, | )<br>)<br>)<br>) |
| JEFF GORDON<br>204 Township Road 1483<br>Chesapeake, OH  45619, | )<br>)<br>) |
| MICKI MARIE DICKERSON<br>5411 NE 255th Drive<br>Melrose, FL  32666, | )<br>)<br>)<br>) |
| KEVIN PHILPOTT<br>11640 County Road 49<br>Live Oak, FL  32060, | )<br>)<br>)<br>) |
| KABWIKE NTANGA<br>14406 Ashmill Drive<br>Midlothian, VA  23112, | )<br>)<br>)<br>) |
| BRUSE OGILVIE<br>2506 Lehigh Street<br>Slatington, PA 18080, | )<br>)<br>)<br>) |
| KIMBERLY ROBERTSON-DAVIDSON<br>P.O. Box 691615<br>Tulsa, OK 74169-1615, | )<br>)<br>)<br>) |
| JOHN LOWMAN<br>418 Garland Drive, #227<br>Lake Jackson, TX 77566, | )<br>)<br>)<br>) |
| RYAN MATTHEW CAVO<br>20028 Needle Pine Drive<br>Round Rock, TX 78664, | )<br>)<br>)<br>) |
| KELLI RAMSEY-GUNN<br>626 Stumer Road<br>Rapid City, SD 57701, | )<br>)<br>) |

No. 17-6263

**CLASS ACTION COMPLAINT**

**Jury Trial:    Yes**

1

CHRISTINA WOOD                          )
3372 Lotze Loop                         )
Coeur d'Alene, ID 83815,                )
                                        )
OLGA BAXTER                             )
35 Lexington Avenue                     )
Greenwich, CT 06830,                    )
                                        )
Plaintiffs, on behalf of themselves     )
And similarly-situated others.          )
                                        )
v.                                      )
                                        )
EXCELSIOR COLLEGE                       )
7 Columbia Circle                       )
Albany, New York 12203                  )
                                        )
        Defendant.                      )
_____ )

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

COME NOW THE PLAINTIFFS, on behalf of themselves and on behalf of similarly-situated others, sue the Defendant and allege the following:

### Nature of The Case

The Plaintiffs bring this action, *inter alia*, to address misrepresentations and omissions made by Defendant Excelsior College ("Excelsior" or "EC") in connection with its Associate Degree in Nursing ("ADN") program.   While Excelsior has an easy admissions policy, graduating from the ADN program is difficult by design.   Of 10,432 individuals attending Excelsior's Associate Nursing program, only 718 individuals were said to have graduated in 2017, according to College Navigator.

Excelsior benefits from keeping consumers enrolled for longer periods of time.   Enrolled consumers pay annual fees and pay for every time they fail a test known as the Clinical

Performance in Nursing Examination ("CPNE"), which costs nearly $2,300 each time a consumer takes it.  Without the CPNE no consumer can graduate.  Excelsior misrepresents the period of time for scheduling and taking CPNE, which results in consumers waiting for months. As will be shown below, Excelsior administers its tests in an unfair and deceptive manner.

These actions and inactions constitute consumer fraud, violate the New York General Business Law §349, *et seq*., and are in direct and material breach of Plaintiffs' contracts with Excelsior.

## Jurisdiction and Venue

1.  Jurisdiction is proper in this Court, and is founded upon 28 U.S.C. § 1332(d)(2)(A). The Defendant is a corporation, which is domiciled in the State of New York.  The representative Plaintiffs are citizens of the various United States, including the State of New York.

2.  Venue in this judicial district is proper in that the Defendant operates a testing center at the New York Medical Center Hospital of Queens, Flushing, New York, where it administers the CPNE in a manner that violates the law as the Plaintiffs allege herein.

## Factual Allegations

3.  The named Plaintiffs in this action are citizens of the United States who reside in Texas, Maine, Ohio, Florida, Virginia, Pennsylvania, Oklahoma, Idaho, South Dakota, and Connecticut.

4. Excelsior represents publicly that Excelsior is a private entity, headquartered in Albany, New York, which purports to provide distance educational services to consumers nationwide in the area of nursing, among other degrees.

5.  Excelsior's activities in operating its Associate Degree in Nursing ("ADN") program occur in New York. Excelsior does *not* operate its program through separate subsidiaries outside

of New York. Although Excelsior suggests that it has buildings in states where consumers, including the Plaintiffs, reside, Excelsior – in addition to running the entire ADN program from New York - conducts tests out of sites that are located in jurisdictions that are not necessarily where Plaintiffs reside.  The test centers are not permanent in nature. By way of example, on August 3, 2017, Excelsior advised exam takers that the "CPNE scheduling has been suspended" at four different Georgia sites.

6.  All of the activities relevant to the alleged violations of law, and the breach of contract, committed by Excelsior occurred in New York.  Excelsior's advertising is/was created in New York and is/was transmitted via the Internet from New York.  The admissions and enrollment policies were created and developed in New York.  Although the Defendant has enrollment and application links on its webpage online, it has a hotline where consumers call to Excelsior's headquarters for questions regarding admissions.  Defendant makes and receives telephone calls to and from consumers in its New York Headquarters. The deceptive and subjective CPNE was created in New York.  The Defendant also has a "live chat" where consumers interact - live -with Excelsior in New York.   Defendant's complained-of Study Guide was created in New York. The Defendant revises the subjective Guide in this State regularly.

7.  Upon information and belief, all of Defendant's "Admission Advisors" communicate out of hotlines/telephone lines that are in New York, and the Defendant maintains an 800 number in New York where it purports to answer consumers' calls regarding nearly every conceivable area of its admissions and enrollment operation.  All of the employment decisions relating to the hiring and firing of Defendant's examiners (CEs and CAs) are made in New York. The Bursar's Office of the Defendant is located in New York.   The Registrar's Office is also located in New York and so is Defendant's Human Resources Offices.

8.   All of Defendant's Officers are based in Excelsior's Headquarters in New York. Excelsior Officers interact with and make presentations to state boards nationwide seeking expansion and program acceptance.  All of the alleged violations of the General Business Law were committed by the Defendant out of its New York headquarters, including the development of the various policies and procedures for Defendant's CPNE.

9.   Excelsior's breaches were all committed in New York.  The breached promises made regarding the program were made in New York.  These breached promises include but are not limited to the provision of an education; the provision of nationally-recognized, let alone any, faculty; the provision of advisement; the provision of fair testing; the provision of objective testing; the provision of adequate equipment; and the provision of a fair accounting as to the significant funds paid.  The Defendant failed to provide the fair appellate process that it promised, and the sham appellate process that Excelsior provides, including the meeting of the supposed appeals committee, occurs in New York.

10.   Although Defendant holds itself as a "college," Excelsior's primary function is not the presentation of instruction.  Indeed, the United States District Court for the Northern District of New York has found as to the Excelsior program that: *"[t]here are no teachers, no classrooms, and no clinical training."  Excelsior College v. Frye*, 306 F. Supp. 2d 226 (2004); *See* also *Excelsior College v. N.Y. State Ed. Dep't*, 306 A.D.2d 675; 761 N.Y.S.2d 700; 2003 N.Y. App. Div. LEXIS 6655, (noting that Excelsior's "external degree program *does not provide education.*")

11.   The Defendant misleads the Plaintiffs and the public as to its status, which depicts the Defendant as an altruistic educational organization, when, in fact, it is a company whose sole purpose and motivation is profit.

12.   At all relevant times herein, the Defendant claimed that, with its "student-friendly" nursing degree programs, "you can [w]ork with nationally recognized faculty" and "[b]enefit from personalized advising." The Defendant declared that it can improve the consumer's "job security, and your earning power."

13.   The Defendant claims to provide an associate's degree in nursing to working individuals.  Typically, the Defendant makes it attractive for Plaintiffs and other consumers to enroll in Excelsior by informing them that EC would accept transfer credits.  The consumers would then enroll, paying a registration fee, and later learn that they obligated themselves to pay an annual registration fee of approximately $500.00.  The Defendant has an interest in expanding the number of years in which a consumer is enrolled and allows a consumer to obtain a nursing degree in as long as 7 years.

14.  Excelsior misrepresents that there are testing sites available for consumers to take the CPNE within a few months.  After enrolling and spending significant time and resources in the Excelsior program, the Plaintiffs find that the representations regarding the sites are not true. Excelsior has difficulties in maintaining and staffing its sites with qualified "examiners." Excelsior fails to inform consumers of these failures and difficulties, and Plaintiffs often wait for months to be assigned a testing site.  Excelsior has egregiously forced certain Plaintiffs who were CPNE eligible to wait over one year to take the CPNE. Excelsior continues to have outrageously long wait-times for the CPNE that they do not inform consumers about at the time of admission. Plaintiffs would not have enrolled in Defendant's program if they knew the truth about the CPNE wait-times or about the problems EC has with its CPNE testing sites.

15.  The Defendant does not disclose to consumers and potential consumers its associate nursing program graduation rates.

16.   After accepting the transfer credits, Defendant typically sells Plaintiffs and other consumers a number of program courses, and Plaintiffs can also test at a company known as Pearson Vue.

17.   The Defendant provides the Plaintiffs and other consumers with misleading cost estimates.   EC fails to include in the cost estimate the cost of subsequent failures of the subjective CPNE.   The registration for taking each CPNE exam is approximately $2,300.   The Defendant represents to consumers in connection with its estimate of costs that:   "Most of our students complete the associate degree program."   Yet the Defendant readily acknowledges that it is unable to ascertain these numbers because of the nature of its seven-year program.

18.      On its website, Excelsior fails to provide the annual pass rate for the CPNE. Instead, Excelsior gives a sample of its own choosing to mislead consumers.   It states:

> "Between **Fiscal Years 2013 and 2017** (July 2012 - June 2017), a total of 6,640 individual students attempted the CPNE and **62.2% passed the CPNE** by June 30, 2017." (http://www.excelsior.edu/about/transparency/nursing).

19.   At all times relevant herein, EC falsely claimed that its programs in nursing are designed "to provide opportunities to *acquire the knowledge and skills* necessary to reach [a consumer]'s personal and nursing career goals."   The Plaintiffs were led to believe that the Defendant operates a *bona fide* nursing program with opportunities to expand their learning and receive an RN degree.   Excelsior did not provide consumers with the clinical education that it promises.   Instead, it provided and continues to provide testing.

20.   Central to Defendant's pattern of unfair and deceptive trade practices is the CPNE test.   For the relevant time period, the Defendant engaged in a pattern and practice of withholding certain material information regarding the CPNE until the Plaintiffs and other consumers had expended resources and were irreversibly committed to completing the program.

21.  During the relevant time period, the Defendant falsely represented that the CPNE provides "[*a*] *carefully controlled and monitored examination experience that insures a fair and objective assessment of your knowledge and skill*."

22.  The Defendant failed to disclose the following as to the CPNE:

- the true cost estimate for retaking the CPNE in the event of failure;
- the flawed nature of Excelsior's testing and the necessity of automatic review and appeal;
- complete information regarding the test until all of the mini-courses were completed, consumers have spent thousands of dollars, and it was time to take the CPNE. At that time, Plaintiffs received information about the test;
- the extent of EC's involvement in designing, administering and manipulating the test, and EC's pecuniary interest and stakes in the result of the test;
- the fact that organizations such as the National Council of State Boards of Nursing ("NCSBN") issued at least one position paper in August of 2005 that call for "[p]relicensure nursing education programs *shall include* clinical experiences with actual patients" so as to insure "the protection of public health, safety and welfare;"
- the fact that NCSBN released surveys in or around 2010, which question the effectiveness of the Excelsior's program;
- that the test, as administered, does not "insure a fair and objective assessment" of the consumer's knowledge and skill;
- that the test is subjective and is susceptible to arbitrary application. As a result, some consumers are allowed to pass when they should not and some are not permitted to pass when they should;
- an actual pass and/or fail rate of the exam, which is not misleading to consumers. Defendant's statements are misleading and violate the pertinent New York's Consumer Protection Laws. Excelsior states:
- "CPNE: The overall pass rate *will be* **65%** or greater." (emphasis added)(*See*, http://www.excelsior.edu/about/transparency/nursing) In fact, Excelsior gives conflicting percentages, which it claims are the actual figures:
- **"The CPNE pass rate from January-December 2012 was 46%"** &
- **"The CPNE pass rate from July 2011 – September 2011 was 63%"** Plaintiffs would simply not have enrolled in Defendant's program had they known of the actual pass figures, or any graduation rates. Moreover, it is believed that the results were not publicly reported for prior years, and they have not been reported for the year 2013;
- the details of the subjective test-appeal policy;
- that at least one state educational authority has deemed the CPNE-based program as inadequate for licensure, finding that students simply take a weekend test;
- that at least one educational authority's rejection of the EC nursing program was due to a finding of a lack of supervised clinical instruction;

- that due to the subjective nature of the CPNE, students find themselves required to take paid workshops, which provide the supervised, clinical instruction, which the EC program lacks; and
- that due to the nature of the exam, some consumers would inherently face different scenarios than other consumers, and that the examiners, the equipment and the test criteria have varied, and do vary, from site to site.

23.   The Defendant falsely suggested that prior knowledge of nursing and/or nursing-related fields assists in the success of the RN program. By way of example, the Defendant suggests to Plaintiffs that their experience as LPN or paramedics would provide an automatic pathway to passing the CPNE.  Excelsior suggests that their workshops are "optional" to entice Plaintiffs to enroll.  But, when consumers fail, Excelsior blames them for believing that their LPN or paramedics experience alone would be sufficient. After already taking the initial tuition plunge, the Plaintiffs learned that they were required to pay a fee separate from their program fee for the said workshop.

24.   EC failed to inform students that EC credits, for courses taken with EC, are not transferrable to other educational institutions with programs that lead to an RN degree.

25.   The Defendant completely controls the design, the administration and the outcome of the CPNE without the policing, or assurance of neutrality, by a detached third party of the exam-taking process.  Among the false impressions that Excelsior gives consumers is that its CPNE is "External[ly] reviewed," but some, if not all, of the reviews are prepared under contract for Excelsior.

26.   Excelsior does not "bank" the portions of the CPNE, which the consumers pass on their first attempt.  Instead, it requires each consumer to retake the entire exam, which adds pressures on the consumers and creates for more opportunities for failing the consumers and extracting new fees.

27. The Defendant maintained a subjective and arbitrary appellate process.  The fact that there is an appellate procedure, whereby some results may be overturned, further undermines the representation that the test is objective.  When an appeal is arbitrarily and subjectively granted, the Defendant demands that consumers acknowledge that by accepting the offer to reverse the failure, the consumer is "accepting the decision of the faculty that [her/his] examination … is nullified and did not count as one of the opportunities to satisfy[ing] this degree requirement…."  The purpose of this requirement appears to be the prolonging of the program and the extraction by Excelsior of additional annual registration fees (and funds for preparation workshops/courses).  Indeed, the EC process of retaking the examination itself can be protracted.  In what appears to be a form retaking notification, EC stated that "the scheduling process [for retaking the CPNE] continues to take four to six months" from the date that an application is submitted.

28. Defendant misleads consumers as to a test, which it markets as the Focused Clinical Competencies Assessment ("FCCA").  Excelsior represents that the FCCA is an objective test that "measures knowledge, understanding, and applied skills required of the associate degree nurse."  The FCCA is administered in a manner that is unfair and deceptive to consumers, and many of the Plaintiffs were required to retake the test because of its lack of objectivity.

29. Plaintiff Shewanda Williams is a resident of the State of Texas.  She learned of Excelsior online.  The idea of distance learning was appealing to this Plaintiff who is the mother of two, with a disabled child.  Plaintiff enrolled with Excelsior in October of 2009.  At that time, Excelsior had represented to Plaintiff that she would receive the same instruction that she would at a traditional college.   The Defendant never intended to deliver on the representation, and the Plaintiff did not receive clinical instruction.  The Plaintiff was repeatedly informed that the CPNE was "fair and objective."  This was untrue.  There were dramatic changes to Defendant's

Study Guide, which is the primary source of information for the CPNE, which contributed to Plaintiff's lack of adequate preparation necessary to pass the CPNE, assuming the test is a *bona fide* one.  Excelsior misrepresented to the Plaintiff that sites were available for taking the exam. When Plaintiff went to take the exam, she learned that the waiting period was almost one year. In February of 2017, the Plaintiff took the CPNE in Syracuse, New York.  She was shocked to learn that the test was extremely subjective.  The Plaintiff was failed by Excelsior, and she pursued an appeal with Excelsior.   Excelsior represented to Plaintiff that there was an appeal's process and that a "committee" would be involved in the decision.  Not surprisingly, Excelsior's process, which is not valid, affirmed the examiner.  In one instance, the examiner confirmed to Plaintiff that it was a choice of "wording" that caused the failure.  After determining that the Excelsior program was completely subjective, the Plaintiff was required to make a career change. The Plaintiff suffered significant damages consisting of lost wages, lost funds for loans Plaintiff had to take, and expenses inherent to the taking the CPNE.  In addition, the Plaintiff lost a position that required RN certification.

30.  Plaintiff Bryan Hunter is a resident of the State of Maine.  He has a bachelor's degree in biology.  Mr. Hunter in an LPN-2 and an EMT-3.  He enrolled with the Defendant in or around October of 2010.  The Defendant wrongfully failed the Plaintiff in 2015, in 2016 and in 2017, and it dismissed him from the ADN program in June of 2017.  The first two tests were taken in Chambersburg, Pennsylvania, and the third test was administered in Glens Falls, New York.   The CPNE was so subjectively applied to Plaintiff that Excelsior changed the methodology, which had been described to Plaintiff.  Had Plaintiff known about the subjective nature of the test, he would not have applied to the program.  When Excelsior informed Plaintiff that it would "support" the Plaintiff, the latter understood that there would be some instruction

provided.  This turned out to be false.  Plaintiff was required to take outside courses and, on one occasion, he was required to travel to Atlanta, Georgia, to attend a workshop.  Every time Plaintiff took the CPNE, he experienced extensive delays.  On the last occasion that he took the test, he had to call Excelsior and ask for a "cancellation" date.

31.  Plaintiff Jeffery Gordon enrolled with the Defendant in June of 2014.  After taking seven paid tests, the Plaintiff wished to take the CPNE.  The Plaintiff learned that the Defendant had misrepresented the availability of test sites and that there was a significant waiting period before testing can take place.  The Plaintiff had to wait 13 months before he could take the CPNE, and he informed the Defendant that he would take the test at any available site.  Mr. Gordon was not aware that he would be required to pay additional fees for the Glens Falls, New York site.  He expected to receive instruction from what he believed to be a college, but he did not.  When Mr. Gordon called to ask a question, he was informed by the Excelsior representative that he would not receive an answer, and he was discourages from calling again.  The CPNE test was subjective and was administered unequally.  A fellow test-taker was allowed to pass after she picked up a syringe from the trash and then placed the syringe into a sharps disposal container.

32.  Plaintiff Micki Dickerson is an LPN with 17 years of experience.  She enrolled with Defendant Excelsior in or around November of 2013.  She took 13 courses administered by Pearson Vue, including an unnecessary course required by Excelsior called "information Literacy."   She was forced to withdraw from Excelsior losing thousands of dollars after taking the CPNE in the now closed Southern Regional Medical Center.  Excelsior withheld from Plaintiff all information regarding the CPNE until close to the time of the test.  The Plaintiff was unaware of the extreme subjective nature of the CPNE and the manner in which an examiner

could fail a consumer.  Indeed, during the test, an examiner concocted a pulse reading and used it as a reason to fail the Plaintiff and make her pay another fee.  Plaintiff did not receive the instruction and support she expected and she was not aware of the problems Excelsior had with exam sites.  She accepted a cancelation so that she can take a test.  Excelsior misrepresented that it had a bona fide appeal.   When Plaintiff protested the results, Excelsior simply affirmed the false finding of the examiner.  Plaintiff suffered emotionally as a result of Excelsior's falsely failing her in addition to her lost wages and funds lost in connection with Excelsior's scheme to defraud.

33.  Plaintiff Kevin Philpott is a resident of the State of Florida who has been an LPN for 17 years.  He enrolled in Excelsior in or around 2012 with the belief that Excelsior is "a college" and that it provides enrollees with instruction and support. After taking several courses with Excelsior, he expected to take the CPNE.  The Plaintiff had to wait for thirteen (13) months to take the test, which was administered in Glens Falls, New York.   The Plaintiff was never informed that it would take a significant amount of time for him to take the CPNE, and Excelsior concealed from the Plaintiff the fact that it had difficulties maintaining some of the sites.  The Plaintiff understood that it would take no more than six months to be able to take the CPNE.  The Plaintiff did not receive the instruction promised, and the Plaintiff was required to attend a workshop in Orlando, Florida.  The Plaintiff had to pay Excelsior additional fees for attending the workshop.   Because Excelsior packed the workshop with consumers, it was difficult for participants to proceed through all of the workstations, and the workshop was not effective.  The Plaintiff also enrolled in another course to make up for the deficiency caused by the lack of instruction.  However, because of the subjective nature of the CPNE, the Plaintiff was failed by Excelsior after he took the exam in Glens Falls, New York in June of 2007.  The exam was

subjectively administered such that two individuals performing in the same manner may be subjected to different treatment. The Plaintiff observed that the exam sites are not adequately prepared as evidenced by the fact that a site had to operate with one less examiner who was missing due to an accident. Like other Plaintiffs, the Study Guide provided by Defendant was confusing. And, when the Plaintiff called the Defendant for support, he was informed to "look at the website" for answers to questions. The Defendant failed to inform the Plaintiff of outside costs and fees. After losing thousands of dollars to Excelsior and its fraudulent program, Mr. Philpott is presently studying to become an RN in a legitimate program, offered at a community college. Excelsior's extensive test-waiting period, the subjective nature of the CPNE and the failure of Plaintiff have caused Mr. Philpott mental anguish, considerable expense and significant loss of income. Not only did the Plaintiff not graduate from Excelsior as promised, but Mr. Philpott must now return to school to begin a community college education, which will last for an additional two years. This has impacted and will impact Plaintiff's career and his income for at least the next three years.

34. Plaintiff Ntanga Kabwike is a resident of the State of Virginia. She learned of the Defendant while working for the United States Army in Fort Drum in New York. She enrolled with Excelsior in April of 2014, because she was traveling and unable to attend school at a particular location. The Plaintiff agreed to enroll with Excelsior believing that she would receive instruction in nursing and faculty support throughout the program. Ms. Kabwike paid for eight courses and was tested through Pearson Vue. Defendant falsely represented that it would provide Plaintiff with feedback. Excelsior assigned Plaintiff three (3) failures of the FCCA and then dismissed her from its nursing program.

35.   Plaintiff Bruse Ogilvie is a resident of the State of Pennsylvania.  He is a Retired Soldier of the U.S. Military who served 23 years and is a Paramedic of 24 years.  The Plaintiff enrolled with Excelsior in September of 2012.  At the time of enrollment, Excelsior represented to Plaintiff that it would provide him with instruction and that the faculty would be knowledgeable in the subject matter of nursing, and that the testing at Excelsior would be fair. Plaintiff was not informed that he would have to spend close to $2,300 each time he took the CPNE and that there would prolonged waiting periods for testing.  When Plaintiff called to speak with an academic advisor, he learned that he was not speaking with someone familiar with the nursing subject matter or that the advisor had the requisite nursing knowledge or ability to answer student's specific nursing related questions intelligently.  The Plaintiff also discovered that the testing practices of the Defendant are inconsistent with Excelsior's representation as to the actual testing.  The Plaintiff was alarmed to learn that Excelsior had misrepresented the waiting period for taking the CPNE.  He was also surprised to learn that the CPNE was not fair or objective. However, the Plaintiff had expended thousands of dollars in the fraudulent Excelsior program and he is now trapped into taking the CPNE or losing the funds he spent. Excelsior assigned Plaintiff a failing grade as to the FCCA and required him to pay to retake the same an additional time.

36. Plaintiff Kimberly Robertson-Davidson is a resident of the State of Oklahoma who has been an LPN for eight years. Plaintiff enrolled with Excelsior in or around 2013. Excelsior represented that the wait period for taking the CPNE was 3-6 months. This did not turn out to be the case. It took one year and 6 months for Plaintiff to test. The Plaintiff was not aware that the annual fee was a method of making additional funds for the Defendant, and Plaintiff did not know that she would wait close to two years to take the test. At first, Plaintiff checked all sites

when applying to take the CPNE, which she believed might enable her to have an earlier testing date. In January 2017, Excelsior changed the Study Guide from the 21st Edition to the 22nd Edition, which varied substantially. Plaintiff had to learn the information as the nature of the test changed. After receiving the Study Guide, it became clear to Plaintiff that a workshop was necessary to pass. This was inconsistent with Plaintiff's understanding that the "support" received from Excelsior would be sufficient to enable her to take and pass the CPNE. Moreover, the Plaintiff informed the Defendant that she had a disability. Yet, the Defendant failed to accommodate the Plaintiff. Ms. Davidson took the CPNE August 4-6, 2017, in Defendant's test site in Texas. When Defendant failed the Plaintiff for unjust reasons, Plaintiff appealed on or about August 7, 2017. The Plaintiff had to seek assistance for her mental harm. The Plaintiff was not aware that earning an ADN from Excelsior would require Plaintiff to be admitted as an RN in another jurisdiction before she can practice nursing in Oklahoma. This information was also withheld from Plaintiff until after she enrolled.

37.  Plaintiff John Lowman is a resident of Texas.  Mr. Lowman was an LVN when he enrolled in the Defendant's program.  He enrolled with Defendant in 2013 with the goal of becoming an RN.  Defendant fraudulently induced Mr. Lowman into enrolling in its program and unjustly failed him twice on the CPNE.  Defendant forced Mr. Lowman to wait an extraordinary amount of time to take the CPNE, each time he took the exam.  Defendant unjustly failed Mr. Lowman on the CPNE in May of 2015 at Defendant's testing center in Madison, Wisconsin.  Defendant also unjustly failed Mr. Lowman on the CPNE in June of 2016 at Defendant's testing center in Lubbock, Texas.  Mr. Lowman was treated unfairly during his CPNE attempts and Excelsior's Examiners were looking for any minor infraction to fail Mr. Lowman.  The Defendant's CPNE Examiners prematurely and erroneously ended Mr. Lowman's

2015 CPNE attempt.  In fact, Defendant sent the Plaintiff a letter in which it admitted that the Plaintiff was "stopped too soon" by Excelsior's examiner.  Although Excelsior was to permit Plaintiff to retake the test without payment, Excelsior also breached this promise and, instead, withdrew him from Excelsior. Also, Defendant forced Mr. Lowman to retake portions of the CPNE that he already passed even though it was the Defendant's error that caused his first CPNE attempt to be ended prematurely.  Furthermore, Defendant forced Mr. Lowman to wait over one year from the time he was failed on the CPNE to retake the test.  During his CPNE retest in 2016, Mr. Lowman encountered non-functional equipment at the Defendant's testing facility and was unjustly failed, again.  Mr. Lowman was failed twice on the CPNE even though the Defendant's CPNE Examiners at both test sites admitted that Mr. Lowman demonstrated that he is a competent nurse.  The Defendant, through their representations, led Mr. Lowman to believe that he would receive instruction and guidance necessary to pass the program.  The representations of the Defendant were made at or near the time of Mr. Lowman's enrollment.  Mr. Lowman never received clinically relevant instruction from Excelsior, and as a result, was not prepared for the CPNE, even assuming that the test is legitimate.  Mr. Lowman would not have enrolled with the Defendant if he knew the truth about the instruction and guidance he would receive.  Simply, the Defendant failed to provide the requisite educational instruction and the equipment for Mr. Lowman to pass the CPNE, which was not an objective test in the first instance.  Additionally, Excelsior kept the CPNE testing process "a secret" until Mr. Lowman finished his "coursework" and became CPNE eligible. It was only at that time that the Defendant disclosed some information regarding the CPNE, such as the study guide and testing locations.  By this time, Mr. Lowman had already spent thousands of dollars and committed significant time and effort to the program.   Excelsior failed to inform Mr. Lowman near the time of enrollment that his

"preparation" for the CPNE would consist merely of a study guide.  As a result, Mr. Lowman felt compelled to pay for and take an extra workshop.  Defendant did not initially inform Mr. Lowman that its program was devoid of education and that he would need an extra workshop to have a chance at passing the CPNE.  Mr. Lowman is now at a different nursing program at a legitimate school.  None of Mr. Lowman's EC credits transferred to his new program.  Mr. Lowman expended a significant amount of time and resources on Defendant's program and he was not given the education that he was promised.  Excelsior's fraudulent conduct and the breaches have impacted Plaintiff financially and have inflicted emotional distress upon him.

38.  Plaintiff Matthew Ryan Cavo is a resident of the State of Texas.   Plaintiff enrolled with Excelsior in or around 2012.  The Plaintiff was easily accepted into Excelsior.  EC misled Plaintiff as to the fees.  Defendant's representative likened EC to Harvard and represented to Plaintiff that he would not have to wait more than 4-6 months to take the final program exam.  This was not true.  Plaintiff had to wait at least one year the first time he took the CPNE, and he had to wait approximately 16 months to take it a second time.  These delays and the failures generated additional fees for Excelsior.  The Plaintiff was required to pay twice to take a workshop because of the weakness in Excelsior's program.   Scheduling delays hinder a consumer's ability to retain the information gained through the workshops.  This Plaintiff was a victim of Excelsior's practice of delays. The Defendant did not release to Plaintiff information regarding areas of failure as to some of the exams. This was significant because the Plaintiff was promised an education, and refusing to inform Plaintiff as to areas of weaknesses made receiving vital information impossible.  The Plaintiff took the CPNE twice; once in May of 2016, in the Albany Medical Center, and the second was on September 8, 2017, at the same location.  Excelsior wrongfully failed the Plaintiff twice in connection with the CPNE, and it ignored his

disability the second time he took the test. In addition to the thousands of dollars Plaintiff spent in connection with Excelsior's fraudulent program, the Plaintiff also suffered severe mental harm and had to consult with several mental health professionals regarding Defendant's mistreatment of him.   Plaintiff Cavo observed that the CPNE test is neither objective, nor valid.   The Plaintiff was informed on one occasion that one of the examiners was "in training."   The examiner who was supervising the trainee instructed the Plaintiff to administer an expired drug, over Plaintiff's objection.   The Plaintiff informed the person who supervised all the examiners that he felt uncomfortable engaging what he felt was illegal conduct.   The police was eventually involved because of Plaintiff's concern over the overall safety of patients at the hospital and because of Excelsior's illegality.   The information regarding the program and the CPNE was withheld from Plaintiff at the time of his enrollment.

39.   Plaintiff Kelli Ramsey-Gunn is a resident of South Dakota.   She was unjustly failed on the CPNE in March of 2016 and in July of 2016.   The CPNE is a subjective test and is administered in a manner that is unfair and deceptive.   It is also administered in a manner that is inconsistent with the CPNE study guide.   Ms. Ramsey-Gunn was not informed of the extraordinarily long wait-time to take the CPNE, which she was forced to deal with.   Ms. Ramsey-Gunn took the CPNE at two different test sites.   The sites had different rules and were very inconsistent.   This added to the subjectivity of the CPNE.   Because the testing sites are inconsistent, and because the CPNE Examiners administered the test in a manner that was inconsistent with the CPNE study guide, it was impossible for Ms. Ramsey-Gunn to know what to do in order to pass.   Excelsior's actions were particularly egregious during Ms. Ramsey-Gunn's second CPNE attempt.   First, EC unjustly failed Ms. Ramsey-Gunn on her second CPNE attempt because EC erroneously claimed that Ms. Ramsey-Gunn's writing and care plan was

vague.  EC claimed that the word tolerance was too vague, which is inconsistent with the CPNE

study guide.  Next, and even more egregious, Ms. Ramsey-Gunn did not have proper information

during the second CPNE attempt because the Defendant's CPNE examiners simply did not

provide it.   None of the Defendant's CPNE testers examined the patient or provided Ms.

Ramsey-Gunn with the proper information at the proper time pursuant to the CPNE study guide.

EC unjustly failed Ms. Ramsey-Gunn for having what the EC examiners claimed was "incorrect"

things on her care plan.  However, Defendant's Clinical Examiner caused Ms. Ramsey Gunn's

care plan to contain the "inaccurate" information that Defendant failed her for.   Defendant

provided Ms. Ramsey-Gunn with incorrect information in regard to the patient, refused to allow

Ms. Ramsey-Gunn to amend her care plan that was based on that information, and then

egregiously failed Ms. Ramsey-Gunn for having that information on her care plan. Ms. Ramsey

Gunn's care plan was based on bed rest because the Defendant's Clinical Examiner put bed rest

on Ms. Ramsey-Gunn's assignment.    When Ms. Ramsey-Gunn received reports from the

Primary nurse, the report stated that the patient was up and in a chair.  Ms. Ramsey-Gunn

informed the Defendant's Clinical Examiner about the incorrect information she was provided in

regard to the patient being on bed rest and clearly informed the Clinical Examiner that she

needed to amend her care plan due to the fact that the patient was not actually on bed rest.  The

Clinical Examiner stated to Plaintiff not to worry, and that "she was good," even though the

patient was not on bed rest.  Ms. Ramsey-Gunn questioned the Clinical Examiner and clearly

explained that she wished to change her care plan due to the new information.  Defendant's

Clinical Examiner was impatient and refused to allow Ms. Ramsey-Gunn to change her care plan.

Ms. Ramsey-Gunn was forced to hand her care plan to the Clinical Examiner without an

opportunity to amend it.  Defendant's Clinical Associate refused to address Ms. Ramsey-Gunn's

concerns regarding the bed rest issue and informed the Plaintiff that she feels Ms. Ramsey-Gunn was forgetting things because of the stress of the weekend.  Ms. Ramsey-Gunn was subsequently failed unjustly.  EC did not provide Ms. Ramsey-Gunn with an accurate cost estimate for its program.   In fact, Ms. Ramsey-Gunn never even received an admissions packet even though she was admitted and enrolled in Defendant's program.   Defendant also did not inform Ms. Ramsey-Gunn about graduation rates or the CPNE at the time of enrollment.   Defendant did not inform Ms. Ramsey-Gunn about the extraordinarily long wait-time to take the CPNE.   She found out information about the CPNE when she became CPNE eligible. Ms. Ramsey-Gunn would not have enrolled with Defendant if she knew the truth about the CPNE, if she knew the actual costs of the program, or if she knew that Defendant's program is devoid of education.  Ms. Ramsey-Gunn withdrew from Defendant's program.  She started a new program at a different institution in August 2017. Ms. Ramsey-Gunn spent a significant amount of time and resources on Defendant's program and she was not given the education that she was promised.  She was also inadequately prepared for the CPNE and unjustly failed on the CPNE twice.  Additionally, Ms. Ramsey-Gunn lost a significant job opportunity as a result of Excelsior' actions.  The Plaintiff had RN job being held for her, but she lost that opportunity as a result of being unjustly failed on the CPNE.

40. Plaintiff Christina Woods is a resident of the State of Idaho.  Ms. Woods has been an LPN for 24 years.  She enrolled with the Defendant in June of 2014.  Excelsior represented to the Plaintiff that it would take no more than four months for Plaintiff to take the CPNE, once she signs up for the exam.  Excelsior further informed Plaintiff that the more sites the Plaintiff selects, the better her chances become for getting an earlier test date. To ensure that she took the CPNE within the promised four-months period, the Plaintiff selected all of Excelsior's sites.  Ms.

Woods even placed herself on a cancelation list. She is yet to receive an exam date. The purpose of enrolling with the Defendant was for Plaintiff to receive her degree and become an RN in as short as period of time as possible. Excelsior sells its program as one where a consumer may able to obtain her/his degree in accordance with her/his own needs. The Plaintiff signed up to take the CPNE in November of 2016, and she is yet to hear from Excelsior. The significant delay has caused Plaintiff harm in the form of lost wages and mental anguish.

41. Plaintiff Olga Baxter is a resident of the State of Connecticut. She has been an LPN since 2013. Ms. Baxter enrolled with Excelsior in August of 2014. The Plaintiff was led to believe that Excelsior would provide the Plaintiff with education and support. The Defendant represented to the Plaintiff that it is a bona fide school with competent faculty. Excelsior also represented that it had affiliations and high standards, which the Plaintiff found not to be true. After Plaintiff enrolled and after she spent significant funds, one of Excelsior's faculty advisors informed the Plaintiff that Excelsior is short on personnel, and for the first time revealed to the Plaintiff that the Plaintiff would have to wait more than a full year to take the CPNE. The same advisor informed Plaintiff that "not everybody is made for nursing. A lot of students will come in, but will not become nurses." Excelsior failed the Plaintiff twice on the FCCA test in or around 2017. Excelsior misrepresented the information regarding the FCCA. It was clear to Plaintiff that Excelsior was setting her up to fail solely to make profit. When Plaintiff discovered Excelsior's fraud and the fact that Excelsior misrepresented the waiting period for taking the CPNE, she enrolled in a nursing program at a legitimate college where there are actual classes and instruction. The Plaintiff has lost significant funds in loans and monies that she has expended in connection with the Excelsior program.

42.  None of the Plaintiffs would have enrolled with Excelsior had they known that the representations regarding the pass rates were manipulated.

43.  None of the Plaintiffs would have enrolled with Defendant had they known that Excelsior misrepresents information regarding the testing sites.

44. This action is maintainable as a class action.  The Plaintiffs believe that the class they propose to represent is so numerous that joinder of all members is impracticable.  Although the Plaintiffs have not been provided with the records from the Defendant, hundreds, if not thousands, of students are/were impacted by Defendant's actions.  There are questions of law and fact common to the class, and the claims of the named Plaintiffs are typical of the claims of the class.  The Plaintiffs will fairly and adequately protect the interests of the class.

### Plaintiffs' Class

45. The Plaintiffs seek to certify a class of all persons who were enrolled with Excelsior at anytime from October 30, 2011 through the date of certification and who were subjected to any Excelsior testing during the same period.  The Plaintiffs reserve their right to amend the class definition set forth herein.

### COUNT ONE
### NYGBL §349 and §350, *ET SEQ*.
### Deceptive Or Misleading Practices

46.  The Plaintiffs reallege the allegations made above and in this Complaint and incorporate the same by reference as if fully set forth herein, and further state:

47.  For that the Defendant Excelsior engaged in conduct that was consumer oriented and did so in a manner, which was materially deceptive and misleading to consumers and this conduct caused Plaintiffs harm.  Specifically, the Defendant made representations and omissions regarding its program, which was not educational, and regarding the FCCA and the CPNE tests,

which is neither objective nor fair.  Moreover, Excelsior fails to inform consumers that its program is flawed.  *See* clear example of Excelsior's admission that Mr. Lowman's exam was "stopped too soon."  Excelsior also fails to inform consumers that they should automatically appeal every CPNE because of the flawed nature of the test.

48. The Defendant materially misled the Plaintiffs in the manner discussed above, including by failing to disclose information regarding the pass/fail rates, or the accurate pass/fail rate, any graduation rate, the nature of the exam as fully discussed above, the lack of education, and the lack of transferability of credit to other institutions.

49. The Defendant provided false pass rates and later manipulated the pass rate by providing a misleading sample to consumers.  Excelsior continues to mislead consumers as to the estimate of costs for attending and completing its fraudulent ADN program.

50. As a result of the representations and omissions, Plaintiffs suffered significant losses, including funds expended in registration and annual fees, course fees, testing fees, workshop fees, conference fees, travel expenses, funds expended in relation to the deceptive program, and lost wages occasioned, in part, by waiting for months beyond the promised dates to take the CPNE.

## COUNT TWO
## Breach of Contract

51. The Plaintiffs reallege the allegations made above and in this Complaint and incorporate the same by reference as if fully set forth herein, and further state:

52. The Defendant, at all the times relevant herein, was under an implied covenant of good faith and fair dealings, and Excelsior breached this covenant when it acted in bad faith and solely for the purpose of profit disregarding the financial and emotional costs incurred by the Plaintiffs.

53. The Defendant accepted significant funds from Plaintiffs on the promises that it provide educational services, and Excelsior was under contractual obligations to provide the Plaintiffs with material information concerning the tests, including but not limited to: the subjective nature of the test, the true annual pass/fail rate, and the non-transferability of the EC credits. The Defendant failed in its obligation to provide Plaintiffs with this information.

54. The Defendant failed to deliver on its promise "to provide opportunities to *acquire the knowledge and skills* necessary to reach [a consumer]'s personal and nursing career goals."

55. The Defendant failed to deliver on its promise to allow the Plaintiffs to test within 4-6 months, as set forth above.

56. The Defendant, in accepting Plaintiffs' significant funds, was also under an obligation to administer its test fairly and objectively. In fact, the Defendant specifically promised in its written representations that it guaranteed such fair and objective testing. Defendant failed to administer the test "fairly and objectively." None of the Plaintiffs were adjudged fairly and based upon her/his knowledge. Instead, the Defendant deviated from its "study guide" and its representatives looked for areas to fail the Plaintiffs so as to cause them to retake the examination, paying Excelsior an additional examination fee each time that they took the said test.

57. Excelsior represents to consumers and represented to the Plaintiffs that it provides an educational program. The Defendant breached that promise when it utterly failed to provide an education to Plaintiffs other than a written manual and a test.

58. The Defendant fails and has failed to honor its promise that Plaintiffs would work with "nationally-recognized" faculty. The Defendant failed to provide the "personalized advising"

promised. Further the Defendant fails and has failed to provide the instruction specific to Excelsior's testing demands that do not necessarily relate to the field of nursing.

59. The Defendant fails to provide proper equipment for the conduct of the examination.

60. The Defendant fails to accommodate those Plaintiffs with disabilities contrary to its policies and its promises.

61. Each of the Plaintiffs alleges that the Defendant administered the tests – consistent with Excelsior's significant conflict of pecuniary interest in the students' failures – in an unfair and subjective manner so that each and every Plaintiff "failed" for reasons other than their knowledge and abilities. Plaintiffs will testify under oath, in the trial of the above-captioned matter, that they were failed for a reason/reasons that were unjust, unfair, subjective and, at times, concocted, and this provides an additional and separate basis for Defendant's breach of contract. By way of example, some of the Plaintiffs have worked in the nursing field for decades, and they were failed for completely invalid reasons and, in some instances, not based on direct observation. During an exam, the Defendant asked a Plaintiff to perform an illegal act that would have endangered the life of patient.

62. As a result of the representations and omissions, Plaintiffs suffered significant losses including but not limited to lost wages and funds expended in relation to the deceptive program such as registration and annual fees, course fees, outside workshops, and testing fees.

### **Prayers for Relief As to Both Counts**

 WHEREFORE, your Plaintiffs respectfully pray that this Honorable Court:

- ▪ Order that the Defendant discontinue its violations of New York General Business Law §349, §350, *et. seq*. FORTHWITH;

- ▪ Require the Defendant to disclose its pass/failure rate for each of its sites and for the entire RN program **annually**;

- Require the Defendant to **conspicuously** post its graduation rates;

- Require the Defendant to clarify in its estimate of costs that consumers will be required to pay a separate fee for each time they take the CPNE.

- Require the Defendant to inform consumers that credits earned in its subject nursing program may not be transferrable;

- Order that the Defendant reimburse Plaintiffs for any and all application fees, registration fees paid, including but not limited to: enrollment fees, annual registration fees, mini-course fees (the term fees herein also includes all "tuitions"), for any workshops taken by Plaintiffs, and for any uniforms and equipment Plaintiffs purchased;

- Order that Defendant reimburse Plaintiffs for all of the FCCA fees and costs;

- Order that Defendant reimburse Plaintiffs for all of the CPNE fees and costs, including all travel and lodging expenses and all amounts paid to all workshops taken to prepare for the CPNE;

- Order that Defendant pay Plaintiffs for all of their emotional distress;

- Order that Defendant pay Plaintiffs for all of their lost wages;

- Require the Defendant to pay statutory fines, costs of suit, and attorneys' fees; and

- Grant your Plaintiffs any such other and further relief as to this Court may appear just and proper.

## JURY TRIAL DEMAND

The Plaintiffs respectfully request a jury trial on all of the factual and legal issues that may be tried by a jury in the above-captioned action.

Respectfully Submitted,
The Plaintiffs,

BY:   _____/s/_____
Their Counsel
John Hermina, Esq.
HERMINA LAW GROUP
Laurel Lakes Executive Park
8327 Cherry Lane
Laurel, Maryland 20707
law@herminalaw.com
Tel 301-776-2003

Gregory Allen, Esq.
Law Office of Gregory Allen
120 W. Wilson Avenue
Glendale, California 91203
Tel 203-535-4636